UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CIVIL ACTION NO. 11-230-HJW-JGW

JAMIE MANZ                                                                                    PLAINTIFF

v.

CLERMONT COUNTY, OHIO, et al.                                                DEFENDANTS

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on three motions. Defendants filed both a motion to dismiss (Doc. 13), to which plaintiff filed a response (Doc. 21) and defendant a reply (Doc. 26), and a motion for summary judgment (Doc. 14), to which plaintiff filed a response (Doc. 22) and defendant a reply (Doc. 25), while plaintiff filed a motion to vacate the preliminary pretrial order (Doc. 16), to which defendant filed a response (Doc. 18). The motions are now ripe for decision.

### I.  FACTS AND PROCEDURAL POSTURE

This case originated from a confrontation between plaintiff, a prisoner at the time in the Clermont County Jail, and several corrections officers. Plaintiff filed suit alleging federal claims under 42 U.S.C. § 1983 for excessive use of force, failure to train and supervise, and conspiracy to violate civil rights, as well as state law claims for assault and battery and intentional infliction of emotional distress. Doc. 1. The parties recount two very different accounts of what transpired.

Defendants maintain that on April 17, 2009, as the corrections officers were preparing inmates for transport to court, plaintiff stood at the door of the cell block and began yelling obscenities at defendant C.O. Whitaker. After plaintiff twice failed to heed Whitaker's

1

instructions to end his disruption, Whitaker and defendant C.O. Cox entered the cell block to transport plaintiff to isolation. Doc. 14-5; Doc. 25-1. Plaintiff refused to walk to his cell, threatened, attempted to break away from, and pushed back against the officers, causing Whitaker to use a balance displacement technique to bring plaintiff to the floor. Plaintiff refused to comply with the officers' repeated orders to put his hands behind his back, eventually complied, was handcuffed and brought to his feet, and taken to a cell. Doc. 14-5, 6, 8; Doc. 25-1. Whitaker eventually charged plaintiff with a Jail Rules Violation for disobeying an officer, disrupting court preparation, and threatening an officer. Doc. 14-5. Plaintiff waived his right to a hearing to challenge the violation and accepted punishment. *Id*.

Plaintiff paints an entirely different picture. He first alleges that Whitaker and others were out to get plaintiff from the outset, because plaintiff dated a woman whose ex-boyfriend was friends with Whitaker and other corrections officers. Doc. 1 at 5. On April 17, 2009, plaintiff maintains that Whitaker called him a racial slur and made other derogatory comments toward him over the jail's loudspeaker. *Id*. at 4. Plaintiff requested an inmate grievance form over the incident, but instead of receiving it was told he was being transferred to a holding cell to cool off. Whitaker arrived with an unnamed officer to transfer plaintiff, ordered him to stand up, and, before he could comply, grabbed plaintiff by the throat and pulled him off the ground. Whitaker allegedly told plaintiff he was friends with the ex-boyfriend and that he was going to kill plaintiff when he got the opportunity. *Id*. After escorting plaintiff to the entrance to the holding cell, plaintiff paused, allegedly afraid that Whitaker would kill him. Whitaker responded by slamming plaintiff to the ground and announcing, "He's resisting, he's resisting!" *Id*. The

2

unnamed officer pinned plaintiff's arm to the ground and he and Whitaker commenced beating plaintiff until two officers arrived and ordered them to stop. At no point, plaintiff asserts, did he resist. *Id.* Plaintiff was taken to the infirmary, where he maintains the nurses minimized him injuries. Plaintiff alleges he had a severe shoulder injury that later required the nursing staff to put his dislocated shoulder back into place. *Id*. at 6-7. When the pain did not subside, plaintiff was taken to Mercy Hospital. When their treatment did not help, he was readmitted and taken to emergency surgery, his arm now several times the normal size. He was diagnosed with Compartment Syndrome and required a skin graft to close the large incision produced by the surgery. *Id*. at 7.

## II. LEGAL FRAMEWORK

### a. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must view the facts in the record and all inferences that can be drawn from those facts in the light most favorable to the non-movant, in this case the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-7 (1986).

As the moving party, defendants have the initial burden of marshaling concrete support in the record for its assertion that no genuine dispute exists. Fed. R. Civ. P. 56(c). Once the movants have met their obligation, the burden shifts to the non-movant plaintiff to set forth

"specific facts showing that there is a genuine issue for trial." *Id*. Importantly, the non-movant must meet this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The non-movant "cannot rest upon its pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Jaszczyszyn v. Advantage Health Physician Network*, 2012 WL 5416616 at *5 (6th Cir. 2012) (quotation and citations omitted); Fed. R. Civ. P. 56(e). The key issue on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### b. Plaintiff's Motion to Vacate the Scheduling Order

To cut to the heart of the matter, plaintiff has identified no evidence in the record to support his claims. He merely cites allegations contained in the pleadings, which, as stated, is insufficient to defeat summary judgment once defendants have met their burden. Recognizing this, plaintiff filed a motion to vacate the scheduling order, and to permit him to conduct further discovery which he believes will produce evidence supporting his claims. Docs. 16 and 17. If the Court finds that defendants have met their burden on summary judgment, plaintiff cannot meet his burden. Therefore, the outcome of plaintiff's motion to vacate the scheduling order is crucial to the defendants' motion for summary judgment.

Plaintiff's arguments in support of his motion are that no meaningful discovery has been done, plaintiff's previous attorney mistakenly agreed to an insufficiently short schedule, and

4

defense counsel reneged on an informal agreement to extend the deadlines. Doc. 16 at 3-4. Defendants counter that plaintiff has been engaged in discovery, formal and informal, for several years, that plaintiff counsel's requests for extensions were never consummated, and that the current motion is delinquent.

### 1.  Factual History

Defendants assert that plaintiff's discovery began shortly after the April 17, 2009, incident that precipitated the lawsuit, when, on May 7, 2009, a lawyer representing plaintiff, Michael O'Hara, made a public records request. Doc. 18-1 at 3. Defense counsel not only provided the records, but offered to assist plaintiff's counsel in obtaining medical records and plaintiff's complete jail file. *Id*. at 4. On June 2, 2009, and July 1, 2009, plaintiff's attorney asked for more records, which defendants provided. *Id*. at 5-8. Defendants maintain they did not hear from plaintiff's counsel again until December 14, 2009, when plaintiff's new counsel, Gary Petti, requested and was given certain records, including those previously provided to plaintiff's former attorney. *Id*. at 9, 10.

After the lawsuit was filed on April 18, 2011, by plaintiff's third attorney, Andrea Reino, this Court, on October 21, 2011, following the filing of the parties' joint Rule 26(f) report (Doc. 6), set the discovery deadline as April 20, 2012, and the dispositive motions deadline as May 4, 2012. Doc. 7. In October, plaintiff provided various medical records to defendants. Defendants produced a copy of the jail's policies and procedures and served plaintiff with interrogatories, to which plaintiff did not respond until December. Doc. 18-1 at 12-16. In January, 2012,

defendants made multiple requests for production of documents related to plaintiff's medical records, each of which went unfulfilled. *Id*. at 17-18.

On February 8, 2012, Ms. Reino informed defendants that she was withdrawing as counsel and that Eric Deters, plaintiff's current attorney, would be representing plaintiff. *Id*. at 19. On March 8, 2012, Mr. Deters' office emailed defense counsel, stating that he was plaintiff's attorney and asking to extend the deadlines in the case. *Id*. at 20. On March 9, 2012, this Court granted the motion to substitute Mr. Deters as plaintiff's counsel. (Doc. 10). On March 19, 2012, Mr. Deters' office again sought an agreement from defense counsel to extend the deadlines. Doc. 18-1 at 22. On that same day, defense counsel responded that she would agree to reasonable extensions, referenced still outstanding discovery, and asked that Mr. Deters call her at a number provided. *Id*. at 22, 23. Elizabeth Mason, at the time counsel for defendants, avers in an affidavit that she spoke with Mr. Deters' office on March 23, 2012, but never Mr. Deters, and that she had no further contact with plaintiff's counsel until John Helbling, then an attorney with Mr. Deters' office, called her on May 2, 2012, after the close of discovery and two days before the dispositive motion deadline, seeking an agreement to extend the deadlines. *Id*. at 1, 2. Ms. Mason declined to agree to an extension, stating that plaintiff's counsel did not seem knowledgeable of the claims nor the extent of discovery, and protesting that counsel never contacted her as she had requested. *Id*. at 2. On that same day, defendants filed their motions to dismiss and for summary judgment, and plaintiff filed his motion to vacate the scheduling order. Docs. 13, 14, 16.

**2. Legal Standard**

There are potentially two different vehicles under which plaintiff could seek an extension in this case. Rule 16(b)(4) of the Federal Rules of Civil Procedure states, "[a] schedule may be modified only for good cause and with the judge's consent." When reviewing a district court's denial of additional time for discovery, the Sixth Circuit has enunciated five factors to consider:

> (1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests. [Citation omitted] The overarching inquiry in these overlapping factors is whether the moving party was diligent in pursuing discovery.

*Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010). The Sixth Circuit uses an abuse of discretion standard, evidencing district courts' broad authority in this area. *Id*.

Rule 56(d) of the Federal Rules of Civil Procedure states, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The party seeking additional discovery has the burden to demonstrate its necessity. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004).[1] The Sixth Circuit has held that, "'to preserve the argument that the grant of summary judgment was too hasty and precluded necessary discovery, the appellant must have complied with the strictures of Federal Rule of Civil Procedure 56(d).'" *Lane v. Wexford Health Sources (Contreator)*, 11-3552, 2013 WL 57887 at *3 (6th Cir. 2013) (quoting *Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995)).

---

[1] The cited cases from before 2010 interpret Rule 56(f), which, in the 2010 amendments to Rule 56, was renumbered as Rule 56(d) with little substantive change.

The required affidavit or declaration must "indicate to the district court the party's need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). "Bare allegations or vague assertions of the need for discovery are not enough . . . . [The movant] must state with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Summers*, 368 F.3d at 887 (quotations omitted). Here too, the Sixth Circuit uses an abuse of discretion standard. *Thomason v. Amalgamated Local No. 863*, 438 Fed. Appx. 358, 360 (6th Cir. 2011).

### 3. Analysis

*A. Fed. R. Civ. P. 16(b)(4) - Five Factors*

Plaintiff makes no arguments regarding Rule 16(b)(4). Nonetheless, the Court will analyze the motion under its rubric.

i. When Plaintiff Learned of the Issue that is the Subject of Discovery

The issue that is the subject of discovery is plaintiff's entire case, which he began investigating through an attorney nearly three years before the close of the discovery period. Even plaintiff's current lawyer had more than forty days from the date he became counsel of record until the end of the discovery period, yet, as plaintiff admits, no significant discovery was conducted.

ii. How Discovery Would Affect Ruling

How additional discovery would affect the ruling on summary judgment is unclear. Plaintiff has made no attempt to rebut defendants' motion with concrete evidence in the record.

8

Plaintiff did not even bother to cite evidence in plaintiff's control, such as medical records which may or may not have established the severity of his claimed injuries. Plaintiff failed even to note the evidence he believes could be unearthed through additional discovery and how it would bolster his case. As a result, this Court is simply unable to determine how additional discovery would impact defendants' motion for summary judgment.

  iii. Length of Discovery Period

The discovery period in this case was six months, which is the standard length in this Court's practice. The deadline was proposed jointly by plaintiff's previous counsel and defense counsel. Doc. 6 at 3.

  iv. Whether Plaintiff was Dilatory in Seeking Discovery

As the history recounted above shows, plaintiff was dilatory in seeking discovery. Counsel had more than a month before the discovery deadline, yet did nothing other than ask defense counsel to agree to an extension, which he never followed up on. Nearly two weeks passed following the end of the discovery period before plaintiff even filed this motion for an extension. Because plaintiff's counsel sought defendants' agreement to extend the deadlines, he was obviously aware that the period was closing, but no discovery was sought.

  v. Whether Defendants were Responsive to Prior Discovery Requests

The factual history detailed previously (as well as the correspondence attached to defendants' brief (Doc. 18)) underscores defendants' attentiveness in responding to plaintiff's discovery requests. Defendants were not only diligent in response but offered to help plaintiff in procuring more documents than were requested. Defendants were flexible not only in their

9

initial agreement to reasonable, but also subsequent cooperation with the plaintiff's tardy discovery responses. See Doc 18-1 at 8, 14-16, 22-23.

In sum, none of the factors weigh in plaintiff's favor. Plaintiff was not at all diligent in pursuing discovery. Moreover, rather than acknowledging and owning up to their own failures, which are apparent, plaintiff's counsel attempts to place all the blame on defense counsel and plaintiff's previous attorneys. Plaintiff has utterly failed to show good cause for modifying the scheduling order.

### B. Fed R. Civ. P. 56(d)

Continuing with the theme of this case, plaintiff has failed to abide by the requirements of Rule 56(d). Plaintiff did submit a declaration, though it appears to relate to Local Rule 7.3(a) regarding informal consultation prior to moving for an extension, rather than to Rule 56(d). Doc. 17. In any event, the declaration and plaintiff's responsive brief do not detail what materials plaintiff hopes to find through additional discovery, nor how such materials would defeat summary judgment, nor do they adequately explain why counsel conducted no discovery for nearly two months after noticing his appearance and recognizing the imminent deadlines.

### 4. Conclusion

Plaintiff has failed to demonstrate that he qualifies for additional discovery under either Rule 16(b)(4) or 56(d). Therefore, his motion to vacate the scheduling order will be denied. As a result, because plaintiff failed to identify specific facts in the record showing that there is a genuine dispute for trial, instead resting on mere allegations in the pleadings, defendants need only meet their initial burden to obtain summary judgment.

### III.  MERITS

#### a.  Count I: Excessive Use of Force[2]

42 U.S.C. § 1983 prohibits a person "acting under color of state law" from depriving another "of a right secured by the Federal Constitution or laws of the United States." *Griffin v. Hardwick*, 604 F.3d 949, 953 (6th Cir. 2010) (quotations omitted).  Plaintiff alleges that defendants breached § 1983 by using excessive force in violation of the Eight Amendment's proscription against cruel and unusual punishment.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).

In analyzing a prisoner's Eighth Amendment excessive force claim, courts ask, "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  This standard accounts for the unique setting of prison, where the need for "security and discipline may require that inmates be subjected to physical contact actionable as assault under common law."  *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002).  The standard "has both an objective and a subjective component.  The objective component requires that the pain be serious.  The subjective component requires that the offending, non-penal conduct be wanton."  *Griffin*, 604 F.3d at 954 (quotations omitted).  To determine whether the use of force was wanton, courts look

---

[2] Plaintiff's complaint is imprecise in separating his claim for excessive use of force and his claim for failure to train and supervise, as the first count seems to meld and confuse the two claims.  For purposes of clarity, the Court will construe the first claim as alleging Whitaker and other unnamed officers violated his rights by using excessive force, and the second claim as alleging Sheriff Rodenberg and the County violated his rights by failing to properly train and supervise.

11

to several factors, including, "the extent of injury suffered by an inmate, 'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.'" *Combs*, 315 F.3d at 556-57 (quoting *Hudson,* 503 U.S. at 7).  Importantly, "[b]ecause prison officials 'must make their decisions in haste, under pressure, and frequently without the luxury of a second chance,' [courts] must grant them 'wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Combs*, 315 F.3d at 557 (*quoting Hudson*, 503 U.S. at 6).

Defendants assert that they are entitled to summary judgment both on the merits of plaintiff's excessive use of force claim, and because they are shielded from liability by the doctrine of qualified immunity.  Doc. 14 at 5.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It is the defendants' burden to raise the protection of qualified immunity, at which point the burden shifts to plaintiff to prove it is inapposite.  *Baker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011).  Courts employ a two-prong test asking, in whichever order it deems appropriate, (1) whether the facts alleged by plaintiff make out a violation of a constitutional right, and (2) whether the constitutional right so violated was "clearly established" at the time of defendants' misconduct.  *Pearson*, 555 U.S. at

232, 236. Unless both questions are answered affirmatively, plaintiff's suit is barred by qualified immunity.

Here, defendants have met their burden by identifying evidence in the record showing that there is no genuine dispute over a material fact related to plaintiff's excessive use of force claim and that they are entitled to judgment as a matter of law. Defendants have cited evidence showing that the use of force was made in a good-faith effort to maintain and restore discipline, rather than sadistically to cause harm. While plaintiff's pain appears to have been serious, defendants have pointed to evidence that plaintiff disobeyed several direct orders, threatened the officers, and resisted their efforts to subdue him, showing that the subjective component of the test for excessive use of force has not been satisfied. The evidence cited in support are the affidavits and incident reports of Whitaker (Doc. 14-5), Cox (Doc. 25-1), Ingle (Doc. 14-8), and Blankenship (Doc. 14-9), as well as the Rules Violation Report submitted by Whitaker, together with plaintiff's waiver of his right to contest it (Doc. 14-5). Because defendants have shown that excessive force was not used, defendants have demonstrated both that plaintiff's claim fails on the merits and that qualified immunity is appropriate, since the facts alleged do not make out an Eighth Amendment violation. Since plaintiff has not adequately responded to defendants' motion, summary judgment should be granted on this claim.

### b. Failure to Train and Supervise Standard

Plaintiff asserted claims against both Clermont County and Sheriff Rodenberg, alleging he was subjected to constitutional violations as a result of their failure to properly train and supervise their employees to refrain from using excessive force. Doc. 1 at 14. Plaintiff also

13

appears to argue that Rodenberg is liable for acquiescing to his subordinates' unconstitutional conduct. Doc. 22 at 11.

A municipality "may be held liable under 42 U.S.C. § 1983 if it maintained a policy or custom that caused the violation of plaintiff's rights." *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 794 (6th Cir. 2012). "One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). To recover against the County, plaintiff has the burden of showing that an "unconstitutional policy or custom existed, that the policy or custom was connected to the county, and that the policy or custom caused his constitutional violation." *Napier v. Madison County, Ky.*, 238 F.3d 739, 743 (6th Cir. 2001).

To prove Rodenberg liable as a supervisory authority, "[t]here must be a showing that the supervisor encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

In either case, liability is predicated on the existence of an underlying constitutional violation for which the governmental entity or supervisor is responsible. Because this Court has determined that plaintiff cannot show that he suffered an underlying constitutional violation, that is, because plaintiff cannot prove that defendants used excessive force against him in violation of the Eighth Amendment, plaintiff's claims against Clermont County and/or Rodenberg for failure

14

to train and supervise or for acquiescing in subordinates' conduct must also fail. *See Napier*, 238 F.3d at 743. Therefore, summary judgment should be granted for defendants on these claims as well, both on the merits and because qualified immunity applies.

### c. Conspiracy to Violate Civil Rights

Plaintiff's third count is against "All Defendants" for so-called conspiracy to violate plaintiff's civil right to be free from excessive force. Doc. 1 at 14-15. Plaintiff appears to have abandoned this claim, as it is not mentioned in his response to the motion for summary judgment. Nevertheless, it should fail for three other reasons.

First, as stated above, because the Court believes summary judgment should be granted and plaintiff's underlying excessive use of force claim should be dismissed, it follows that a conspiracy claim based on the same constitutional deprivation should likewise fail. Second, defendants point out that the intracorporate conspiracy doctrine precludes plaintiff's conspiracy claim, as the Sixth Circuit has held that a corporation cannot conspire with its own agents and employees. *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984). Third, defendants have cited evidence in the record showing that there was no conspiracy to violate plaintiff's rights, most notably the affidavits filed by Whitaker, Rodenberg, Ingle, Blankenship, and Cox denying any such thing. Docs. 14-5, 14-6, 14-8, 14-9; Doc. 25-1. Plaintiff, as stated, has failed to meet his burden to show there is a genuine dispute regarding this fact. For any and all of these reasons, defendants' motion for summary judgment should be granted and plaintiff's conspiracy claim should be dismissed.

### d. State Law Claims

15

Because this Court recommends granting defendants' motion for summary judgment and dismissing plaintiff's federal law claims, only plaintiff's state law claims for assault and battery and intentional infliction of emotional distress remain. Doc. 1 at 15-16. Therefore, the Court also recommends declining to exercise supplemental jurisdiction over plaintiff's remaining state law claims, pursuant to 28 U.S.C. § 1367(c)(3). As a result, plaintiff's state law claims for assault and battery and intentional infliction of emotional distress should be dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated, accordingly,

**IT IS ORDERED:**

(1) Plaintiff's motion to vacate the scheduling order (Doc. 16) is **denied.**

**IT IS RECOMMENDED:**

(1) Defendants' motion for summary judgment [Doc. 14] should be **granted** and plaintiff's federal claims should be **dismissed with prejudice**;

(2) Plaintiff's state law claims should be **dismissed without prejudice**; and

(3) Defendants' motion to dismiss [Doc. 13] should be **denied as moot**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and

specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

    This, the 19th day of February, 2013.        s/ J. Gregory Wehrman_____
                                                                                        J. Gregory Wehrman
                                                                                    United States Magistrate Judge